IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALBERTO DIAZ, Individually and on behalf of other employees similarly situated, § § § § *Plaintiff*, § § v. § § J.P. MORGAN CHASE BANK, N.A., § § *Defendant*. § | C.A. NO. 4:17-cv-03047 |

### PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

Per this Court's Order of October 11, 2019 which preliminarily approved the settlement agreement of the Parties, Plaintiff Alberto Diaz ("Plaintiff"), individually and on behalf of all others similarly-situated, and Class Counsel file this, Plaintiffs' Unopposed Motion for Final Approval of Collective and Class Action Settlement and Motion for Attorneys' Fees, Costs, and Expenses (the "Motion"). Pursuant to Local Rule 7.1(d), this Motion is supported by a Brief in Support of Plaintiffs' Unopposed Motion for Final Approval of Collective and Class Action Settlement and Attorneys' Fees, Costs, and Expenses (the "Brief"), set forth below, which identifies in detail the factual and legal basis for this Motion. As no class members have objected to the settlement and the proposed award of attorneys' fees, costs and, expenses and no class members have opted-out of the settlement class, and as shown further in the Brief, the parties respectfully request the Court grant final approval of the settlement agreement and proposed settlement.

Plaintiffs' Motion and Brief are supported by evidence contained in a separately filed Appendix, pursuant to Local Rules 7.1(i) and 7.2(e). Plaintiffs incorporate the Brief and Appendix to this Motion as if set forth fully herein.

Respectfully submitted,

TRAN LAW FIRM

/s/ *Trang Q. Tran*
Trang Q. Tran
Federal ID: 20361
2537 S. Gessner Road, Suite 104
Houston, TX 77063
Telephone: (713) 223-8855
Facsimile: (713) 623-6399
ttran@tranlawllp.com
service@tranlawllp.com

**ATTORNEY FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record via the Court's CM\ECF on January 16, 2020.

/s/ *Trang Q. Tran*
Trang Q. Tran

## **CERTIFICATE OF CONFERENCE**

I certify that on January 15, 2020, Class Counsel conferred with counsel for Defendants regarding the relief requested in this motion. On January 16, 2020, Counsel for Defendants stated that Defendants are unopposed to the relief requested in this motion.

/s/ *Trang Q. Tran*
Trang Q. Tran

**BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES**

Plaintiff Alberto Diaz ("Plaintiff"), individually and on behalf of all others similarly-situated, submit this Brief in Support of Unopposed Motion for Final Approval of Collective and Class Action Settlement and Motion for Attorneys' Fees, Costs, and Expenses, and respectfully show in support as follows.

## I. INTRODUCTION

Plaintiffs' Original Complaint pleads claims for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") (ECF No. 1-1 – Plaintiffs' Original Complaint).

On October 11, 2019, this Court approved the Parties' Joint Motion for Approval of Settlement reached in this case, found that the Settlement Agreement was the result of "fair and reasonable resolution of a bono fide dispute," and certified settlement classes of current and former Banker or Teller (Branch Manager – Trainee, Lead Teller – Ops Spec Trainee, Lead Teller – Ops Specialist, Personal Banker II, Personal Banker II – SB/MOD, Private Client Banker, Private Client Banker – SB, Private Client Banker – SB/MOD, Relationship Banker, Relationship Banker – MOD, Relationship Banker – SB, Relationship Banker – SB/MOD, Relationship Banker II, Sr Home Lending Advisor, Sr Home Lending Advisor CPC, Sr Teller, and Teller) ("BANKER OR TELLERS") "pursuant to Section 16(b) of the FLSA" and "pursuant to FED. R. CIV. P. 23." (ECF No. 21, ¶2).

The Settlement Agreement provides a claims-made fund of $110,000.00 (the "Maximum Gross Settlement Amount"), including Class Counsel's Fees, Costs and Expenses, to resolve the Released Claims including the FLSA claims of the Plaintiff, Opt-in Plaintiffs and Settlement Class members who timely submitted claim forms (the "Final BANKER OR TELLER FLSA Settlement

Class") of all Plaintiffs, Opt-in Plaintiffs and Settlement Class members who did not timely opt-out from the Settlement Class (ECF No. 22.). The proposed settlement here satisfies the requirements of Rule 23, and is "fair, reasonable, and adequate" and is also fair, reasonable and adequate for the purposes of the FLSA.

After the Settlement Agreement was preliminarily approved, the conditionally certified Settlement Classes were given notice of the proposed settlement and the opportunity to submit a claim form to receive a portion of the fund. (ECF No. 22) They were also notified of their opportunity to object to the settlement, opt-out of the settlement, and appear at the final approval hearing. (*Id.*).

As demonstrated in the declaration of Jeff Moore ("Moore"), a representative of KCC Class Action Services, LLC ("KCC"), the Court appointed claims administrator in this case, as of January 16, 2020, the Settlement Class consisted of 34 possible opt-ins (*See* Ex. A-1- Declaration of Jeff Moore). Of the 34 Settlement Class Members who received the claim form in the mail, no exclusion forms ("opt-out" requests) or objections were made. (MFA App. p. 39, ¶¶10-13). Additionally, based on supplemental data provided to Class Counsel by More on January 13, 2020, 11 consent forms were received and processed. (*See* Ex. A-1- Declaration of Jeff Moore).

Now, Plaintiffs request that this Court grant final approval of the settlement. The Defendants do not oppose the relief sought herein. In connection with requesting final approval, Plaintiffs also request the Court: (1) grant Final Judgment on the Released Claims; (2) confirm as final the certification of the Settlement Classes conditionally certified in its Order Approving Preliminary Settlement for purposes of settlement only; (3) find for purposes of settlement only, that the BANKER OR TELLER  FLSA Settlement Class satisfies the requirements to be maintainable as a settlement collective action under 29 U.S.C. § 216(b); (4) final approval of the

Service Payments to certain Plaintiffs and Opt-in Plaintiffs as provided in the Settlement Agreement; (5) approval of the Class Counsel's Fees, Costs, and Expenses as provided for in the Settlement Agreement and otherwise described herein; (6) dismissing the Released Claims from the Litigation on the merits and with prejudice and permanently enjoining all members of the Final Settlement Classes from prosecuting against Defendants and the Released Persons any Released Claims; and, (7) asserting and retaining jurisdiction over the claims alleged, the Parties in the Litigation, and the implementation and administration of this Settlement Agreement.

## II. BACKGROUND

**B. Preliminary Approval of the Settlement Agreement**

On October 11, 2019, this Court preliminarily approved the Settlement Agreement reached in this case, found that the Settlement Agreement was the result of "fair and reasonable resolution of a bono fide dispute," and conditionally certified settlement classes of approximately 34 current and former "BANKER OR TELLER s" "pursuant to Section 16(b) of the FLSA" and "pursuant to Fed. R. Civ. P. 23." (ECF No. 23).

**C. The Settlement Classes**

Pursuant to the Settlement Agreement, the parties stipulate, for settlement purposes only, to the certification by the Court of a collective action as to all claims encompassed by the Settlement Agreement pursuant to the FLSA the Court certified the following FLSA class under 29 U.S.C. § 216(a) and Texas state law settlement classes under Federal Rule of Civil Procedure 23 for settlement purposes only:

> Chase's records show that during the Covered Period[1], you held the position of Branch Manager – Trainee, Lead Teller – Ops Spec Trainee, Lead Teller – Ops Specialist, Personal

---

[1] The Covered Period under federal law runs from October 11, 2015 through [Date of Preliminary Approval],

Banker II, Personal Banker II – SB/MOD, Private Client Banker, Private Client Banker – SB, Private Client Banker – SB/MOD, Relationship Banker, Relationship Banker – MOD, Relationship Banker – SB, Relationship Banker – SB/MOD, Relationship Banker II, Sr Home Lending Advisor, Sr Home Lending Advisor CPC, Sr Teller, or Teller in the following branch locations during the following time periods:

<<Dates>>   <<Work Weeks>>   <<Position>>   <<Branch location>>

**D. The Settlement**

The Settlement creates a common fund claims-made settlement with the Maximum Gross Settlement Amount of $110,000.00. (ECF No. 22). KCC was responsible for deducting from the Maximum Gross Settlement Amount, Class Counsel's Fees, Costs and Expenses approved by the Court ($36,686.73), to compute the Revised Gross Settlement amount of $73,313.27. (ECF No. 22, ¶ 3.5 (A). KCC will calculate the final amounts due to each Qualified Class Member as the Final Individual Settlement Amount and issue checks payable to said Qualified Class Members. (ECF No. 22, ¶ 3.1 (C).

If the Settlement Agreement receives final approval in connection with this Motion, Settlement Class members who timely submitted claim forms will be allocated a portion of the Revised Gross Settlement Amount based on the number of weeks worked by that class member, with the unclaimed monies not being paid and remaining as the property of the Defendants. (ECF No. 22. ¶ 3.5 (B).

In exchange, all Final Settlement Classes are bound by the Final Approval Order, the Final Judgment, and the releases set forth in the Notice and the Settlement Agreement, unless they timely submitted an exclusion form. The Settlement Class members provided a release of all past and

---

inclusive).

present matters, including but not limited to: disputes, claims, etcetera; all claims asserted in the litigation; all claims for unpaid wages, minimum wages, liquidated damages; claims related to the allegedly impermissible chargebacks or under the RICO statute. (ECF No. 22, Ex D). The scope of the releases was fully described in the Settlement Agreement, Court-approved Notice, , and the Preliminary Approval Order. (ECF No. 22, & ECF No. 23.)

**E. Notice Process**

    **1. The Settlement's Class Notice Requirements Were Satisfied.**

The procedures for giving notice to the Class Members, as set forth in the Settlement Agreement and ordered in the Preliminary Approval Order, have been properly followed. (ECF No. 22; ECF No. 23). The Court directed that the proposed Class Notice and individualized claim forms be sent to class members in the manner specified by the Settlement Agreement (ECF No. 23).

On or about October 29, 2019, counsel for the Defendants provided the KCC with a spreadsheet containing the names and addresses of individuals identified as Members of the Settlement Classes. (*See* Ex. A-1- Declaration of Jeff Moore). Prior to mailing the Court-approved Notices and claim forms ("Notice Packets"), KCC used the National Change of Address database to update Class Members' addresses. (*See* Ex. A-1- Declaration of Jeff Moore).

On November 7, 2019, KCC mailed the Notice Packets to the Class Members. (ECF No. 22 ¶ 2.5 (A-C). KCC made continued attempts to research addresses for Class Members whose Notice Packets were returned. (ECF No. 22 ¶ 2.5 (C). Of the 34 Notice Packets mailed, 11 consent forms were timely received, none were returned undeliverable as of January 16, 2020 resulting in a presumption that 100% of the Settlement Class mailing the Notice Packets. (*Id.*). Thus, the

Settlement Administrator followed accepted best practices to ensure that the Notice reached as many Class Members as feasible. (See Ex. A-1 declaration of Jeff More)

### III. ARGUMENTS AND AUTHORITIES

**A. The Best Practicable Notice of Settlement Has Been Provided to the Class.**

The mailing of the Notice Packets to Class Members and the general administration of the notice process, as described above, meet the requirements for the "best practicable" notice in this case as necessary to protect the due process rights of Class Members. (ECF No. 22) ("The Settlement Notice to be sent to members of the Settlement Classes [. . .] is hereby found to be the best practicable means of providing notice under the circumstances and, when sent, shall constitute due and sufficient notice of the proposed Settlement and the Final Approval Hearing [. . .]")). *See also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best practicable" notice with description of the litigation and explanation of opt-out rights satisfies due process); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to class members who can be identified through reasonable means); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections"); *Jenkins v. Trustmark Nat'l Bank,* 300 F.R.D. 291, 301-302 (S.D. Miss. 2014). Therefore, the Court may proceed to determine the fairness and adequacy of the Settlement, and order its approval, secure in the knowledge that all absent Class Members have been given the opportunity to participate fully in the opt-out, objection, comment, and approval process.

**B. Final Approval is Appropriate Under Rule 23 If it Is Fair, Adequate, and Reasonable, and Under the FLSA If it Is Fair.**

"Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable and adequate." In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010, 910 F. Supp. 891, 930-31 (E.D. La. 2012) (citations omitted). See also Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977) ("It is often said that litigants should be encouraged to determine their respective rights between themselves. Particularly in class action suits, there is an overriding public interest in favor of settlement. [. . .] It is common knowledge that class action suits have a well-deserved [sic] reputation as being most complex. The requirement that counsel for the class be experienced attests to the complexity of the class action.") (internal citations omitted).

Similarly, under the FLSA, a settlement that results in waiver of FLSA claims should be approved where it is "entered as part of a stipulated judgment approved by the court after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). A settlement is fair, adequate and reasonable, and therefore merits final approval, when "the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation, Fourth* (Fed. Judicial Center 2004), § 21.6 at 309.

**C. The Settlement is Presumptively Fair Because of the Lack of Any Objection to the Settlement by Class Members to Date, the Discovery Conducted, Class Counsel's Experience, and the Arms'-Length Negotiations.**

As previously noted, there were no objections or opt-out forms received by KCC. (*See* Ex. A-1 declaration of Jeff More) Furthermore, the Court, after considering briefing by the parties and a hearing on Plaintiffs' Motion for Preliminary Approval of this Settlement, found that preliminary approval of the settlement was appropriate, in part, because "the terms and conditions set forth in the Settlement Agreement were the result of fair and reasonable resolution of a bono fide dispute between competent and experienced counsel for both plaintiffs and

defendants." (ECF No. 23). The claims rate and lack of objections or exclusion requests further ratifies the Court's previous finding.

### D. The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation.

11 Claim Form Packets representing $19,273.73 in compensation to the Final Settlement Class were accepted by Defendants with no additional Claim Form Packet pending review. (*See* Ex. A-1 Declaration of Jeff Moore). Additionally, all of the Settlement Class Members, including the Final BANKER OR TELLER FLSA Settlement Class, will receive the benefit of the Released Possible Fraud Claims as there were no opt-outs from the Settlement Class. (ECF No. 22). While the value of the damages for the claims the Defendants may have asserted against members of the Settlement Class is difficult to determine due to the range of damages available pursuant to various causes of action which may have been asserted (*e.g.* punitive damages for fraud), it is reasonably accurate to say that the Final Settlement Class received monetary and non-monetary benefits that should be valued at no less than $110,000.00.

Furthermore, the settlement of this Lawsuit provides the Final Settlement Class with known compensation as opposed to the potential for no compensation due to the uncertainties of litigation. It also reduces ongoing litigation which would have been vigorously opposed by the Defendants. Finally, it provides all Final Settlement Class members with release of certain claims premised on fraudulent sales that the Defendants may have asserted against them in separate litigation.

### E. The Court Should Grant Final Class Certification and Collective Action Designation.

The Court's Preliminary Approval Order provisionally certified the Settlement Classes pursuant to FED. R. CIV. P. 23, and provisionally designated the case as a FLSA collective action. (ECF No. 23). The Court ruled that, for purposes of settlement, the Class meets the Rule 23 requirements as well as the FLSA collective action requirements. (*Id.*).

During the time period between the initial mailing of the Settlement Notice to the Class Members and the January 6, 2020 consent form deadline, no Class Member objected to or sought to be excluded from the Settlement Agreement. (*See* Ex. A-1 declaration of Jeff More). This demonstrates that the certified classes, Class Representatives and Class Counsel were proper.

For these reasons, and the reasons set forth in Plaintiffs' motion for preliminary approval, Class Counsel respectfully submit that the Court should grant final certification and collective action designation for purposes of settlement of this matter and should confirm the appointment of the Class Representatives and Class Counsel.

**F. The Court Should Finally Approve the Enhancement 2Awards to the Designated Plaintiffs.**

The Settlement Agreement preliminarily approved by the Court set forth Enhancement Award payments for Plaintiff Diaz and Plaintiff Sanchez in the amount of Three Thousand Dollars ($3,000.00) each not to exceed Six Thousand Dollars ($6,000.00). (ECF 22, ¶3.3). These Enhancement Awards reflect certain Plaintiff and opt-in Plaintiff participation in case preparation and mediation. All Class Members were provided with notice that some individuals would receive Service Awards, but there were no objections by any Class Member to same. (*See* Ex. A-1 declaration of Jeff More).

**G. The Court Should Finally Approve Class Counsels' Reasonable Attorney Fees, Costs, and Expenses as Allocated in the Settlement Agreement.**

Plaintiffs also seek, and Defendants are unopposed, to an award of attorneys' fees, costs, and expenses in the amount of $36,686.73, and the Settlement Class Members were advised in the court-approved written notice of that amount sought for attorneys' fees, costs and expenses. (ECF 22, Ex. C) (notices to Class Members from KCC explaining Class Counsel will seek $36,686.73 of the Maximum Gross Settlement Fund of $110,000.00 for attorneys' fees, costs, and expenses).

No Class Member objected to that proposed attorneys' fees, costs, and expense award. Also, no opt-out forms were received by KCC. (*See* Ex. A-1 declaration of Jeff More).

"It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained." *Jenkins*, 300 F.R.D. at 306 (citing *Boeing Co. v. Van Gemert*, 44 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991)). Courts in the Fifth Circuit frequently grant attorneys' fees as a reasonable percentage of a common fund. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, (5th Cir. 2012) (endorsing use of percentage method when calculating attorneys' fees in common fund class action cases). While awards "commonly fall between [a lower end of] 20% [. . . and an] upper end of 50%," some courts are reluctant to order an award of greater than one third of a common fund. *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 368 (S.D. Miss. 2003); *see also*, *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) ("the customary contingency fee in labor litigation is … 35 to 40 percent.").

Once a reasonable benchmark percentage is found, courts must consider review the percentage for its reasonableness under the framework set forth in *Johnson v. Ga. Hwy Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The relevant factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the claimant's attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the claimant or the circumstances; (8) the amount of recovery involved and the results obtained; (9) counsel's experience, reputation, and ability; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the claimant; and (12) awards in similar cases.

*Id.* at 717-19.

Here, the Settlement Agreement contemplates "CLASS COUNSEL FEES, COSTS AND EXPENSES" (hereafter "attorneys' fees, costs, and expenses") equal to an amount not to exceed $36,686.73 of the "MAXIMUM GROSS SETTLEMENT AMOUNT" $110,000.00. (ECF No. 22, 3.2 (A)). The legal services agreements entered by Plaintiffs, and consented to by the Original Opt-In Plaintiffs, specified a 40% contingency fee after recovery of costs by Plaintiffs' counsel. A 40% attorneys' fees, costs, and expenses recovery is in line with the contingency fee agreements between the undersigned and the named Plaintiffs. *Smith*, 216 F.R.D. at 368. However, as explained below, the actual attorneys' fees, costs, and expenses requested by Class Counsel is less than the 40% contingency fee specified in the legal service agreements.

The Settlement Agreement and Order granting preliminary approval of the Settlement Agreement provide that Class Counsel may use the value of Released Possible Fraud Claims in evaluating the degree of success obtained relative to an award of attorneys' fees, costs, and expenses. (ECF No. 22 & 23). Alternatively, if the Court evaluates the degree of success obtained by Class Counsel by adding the Maximum Gross Settlement Amount ($110,000.00) (*i.e.* the maximum remuneration that could have been paid to Settlement Class members) with the Released Possible Fraud Claims ($110,000.00), then the $36,686.73 request for attorneys' fees, costs, and expenses represents 33.3% of the maximum settlement value negotiated by Class Counsel for the Class Members. (ECF 22, ¶3.2 (A)).

Therefore, regardless of whether the Court finds that the value of relief obtained by Class Counsel for their clients in this Lawsuit is equal to the (1)Total Settlement Payment to be paid to all Authorized Claimants plus the value of Released Possible Fraud Claims, or the (2) Maximum Gross Settlement Amount plus the value of the Released Possible Fraud Claims ($110,000.00) ,

the sum requested by Class Counsel for attorneys' fees, costs, and expenses ($36,686.73) is 6.7% or less of those amounts. Moreover, the following *Johnson* factors support the attorneys' fees, costs, and expenses request.

### 1. The Case Required Substantial Time and Labor

Completing the case through settlement demanded considerable time and labor. Before and during the litigation of the instant action, involving a putative class/collective of 34 Settlement Class members, Class Counsel had to investigate the underlying merits of the claims, including the strength of Plaintiffs' "off-the-clock" claims and state law claims, and whether the putative class and collective action members at multiple locations were similarly situated.

After Notice Packets were issued by KCC, Class Counsel engaged in numerous conversations and significant correspondence with Plaintiffs, Opposing Counsel and Claims Administration regarding the settlement. That required substantial time.

Each of the above-described efforts was essential to achieving the Settlement before the Court. The time and resources expended by Class Counsel justify the attorneys' fees, costs, and expenses that are being requested.

### 2. Class Counsel Assumed Considerable Risk Due to the Contingency Relationship Between Counsel and Plaintiffs and Preclusion from Other Employment

In connection with the fourth and sixth *Johnson* factors, courts consider the risks to Class Counsel involved with prosecuting the action.

Class Counsel have prosecuted the action entirely on a contingent fee basis. In prosecuting a complex action such as this one, Class Counsel assumed a significant risk of nonpayment, and time spent working on the case necessarily precluded other employment. (*Id.*). *See also*, *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 859-60 (E.D. La. 2007) ("Recognizing the contingent

risk of nonpayment in [class action] cases, courts have found that class counsel ought to be compensated both for services rendered and for risk of loss or nonpayment assumed by carrying through with the case") (internal quotations and citations omitted). Moreover, public policy, specifically "ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims," supports Class Counsel's request. *Jenkins*, 300 F.R.D. at 309.

Accordingly, the fourth and sixth factors support the requested award.

### 3. Class Counsel Achieved an Excellent Result

Class Counsel submit that the Court should respectfully find that the results in this case are excellent for the Class Members. First, the Class Members who submitted claims will receive compensation for their FLSA and respective state law claims in the amount of approximately $19,273.73. (*See* Ex. A-1 Declaration of Jeff Moore). The Settlement Agreement also provides substantial monetary relief which has been overwhelmingly supported by the Class Members. Thus the eighth *Johnson* factor supports the request.

### 4. The Requested Attorneys' Fees, Costs, and Expenses are Lower than Fees Awarded in Similar Cases

The attorneys' fees, costs, and expenses sought by Class Counsel are "on the lower end" of fees requested as percentages of common funds. *See, e.g., Vela*, 276 F.3d at 681 ("the customary contingency fee in labor litigation is … 35 to 40 percent."); *Jenkins*, 300 F.R.D. at 310 (citing *Smith*, 216 F.R.D. at 368 for the proposition that 20% is the lower end of a normal fee award). Successful settlements for this type of action generally support fee awards of at least 33.3%. *See id.* (citing litany of cases). Whether the Court considers Class Counsel's attorneys' fees, costs, and expenses request at 33.3% of the total value of the Settlement, the attorneys' fees, costs, and

expenses request of Class Counsel is presumptively reasonable. The twelfth *Johnson* factor does not support a decrease to Class Counsel's request.

### 5. Remaining *Johnson* Factors Support the Request for Attorneys' Fees, Costs, and Expenses

Finally, the Court should respectfully find that the remaining *Johnson* factors support Class Counsel's attorneys' fees, costs, and expense request. (Specifically, Class Counsel are reputable and experienced attorneys, who spent, to date, approximately 2.5 years diligently prosecuting the claims of the Plaintiffs and who achieved an excellent result for them. In sum, the Court should respectfully find no reason to diminish the attorneys' fees, costs, and expenses requested by Class Counsel due to the *Johnson* factors. At 33.3% of total value, depending on how the Court decides to measure the results achieved by Class Counsel, the request for attorneys' fees, costs, and expenses is reasonable and justified.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court grant this Unopposed Motion for Final Approval of Collective and Class Action Settlement and Unopposed Motion for Attorneys' Fees, Costs, and Expenses.

Respectfully submitted,

TRAN LAW FIRM

/s/ *Trang Q. Tran*

Trang Q. Tran
Federal ID: 20361
2537 S. Gessner Road, Suite 104
Houston, TX 77063
Telephone: (713) 223-8855
Facsimile: (713) 623-6399
ttran@tranlawllp.com
service@tranlawllp.com

**ATTORNEY FOR PLAINTIFF**